1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   STEPHON DEJON ALEXANDER,              No.  2:19-CV-2073-WBS-DMC-P

12                   Plaintiff,

13        v.                               <u>FINDINGS AND RECOMMENDATIONS</u>

14   P. KUPPINGER, et al.,

15                   Defendants.

16

17            Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the court are: (1) Defendants' Motion for Summary Judgment,

19   ECF No. 31, Plaintiff's opposition, ECF No. 35, Defendants' reply, ECF No 37, and Plaintiff's

20   response to Defendants' reply, ECF No. 40; (2) Defendants' motion to strike Plaintiff's response

21   to their reply brief, ECF No. 41, Plaintiff's opposition, ECF Nos. 42, 44, and Defendants' reply,

22   ECF No. 43; and (3) Plaintiff's motion for civil contempt, ECF No. 36, and Defendant's

23   opposition, ECF No. 39.  For the reasons discussed below, the Court finds that, even upon giving

24   consideration to Plaintiff's improperly filed response to Defendants' reply, (which Defendants

25   ask be stricken), summary judgment in Defendants' favor is appropriate based on Plaintiff's

26   failure to exhaust available administrative remedies prior to filing suit.

27   / / /

28   / / /

                                          1

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

2

1    there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).  It is

2    sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the

3    parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

4         In resolving the summary judgment motion, the court examines the pleadings,

5    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

6    See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

7    477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

8    court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

9    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

10   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

11   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

12   1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

13   judge, not whether there is literally no evidence, but whether there is any upon which a jury could

14   properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

15   imposed."  Anderson, 477 U.S. at 251.

16

17                          **I. PLAINTIFF'S ALLEGATIONS**

18         This action proceeds on Plaintiff's first amended complaint against Defendants

19   Kuppinger, Watkins, and Gorrell.  See ECF No. 15, pgs. 1, 2.  Plaintiff raises two claims arising

20   under the Eighth Amendment.  See id. at 3-8.  In Claim I, Plaintiff alleges Defendants Kuppinger

21   and Watkins used excessive force against him on April 2, 2018.  See id. at 3.  In Claim II,

22   Plaintiff alleges Defendant Gorrell demonstrated deliberate indifference on April 2, 2018, by

23   failing to prevent Kuppinger and Watkins from using excessive force.  See id. at 4.  Plaintiff's

24   specific allegations are outlined below.

25   / / /

26   / / /

27   / / /

28   / / /

1

<u>Claim I</u>

2          Plaintiff alleges that on April 2, 2018, he arrived at Building 1, B-Yard, at

3   California State Prison – Sacramento (CSP-SAC), from a medical evaluation.  <u>See id.</u> at 3.

4   Plaintiff states that he informed Defendant Gorrell, a nurse at the facility, that he had been absent

5   during medication distribution due to the medical evaluation and asked if he could receive his

6   medication before going to school for the day.  <u>See id.</u>  Plaintiff alleges that Defendants

7   Kuppinger and Watkins, both correctional officers at the facility, started screaming at him

8   because he was late.  <u>See id.</u>  He asserts that Defendants Kuppinger and Watkins screamed, "Lock

9   it up," and that Defendant Gorrell told Kuppinger and Watkins that Plaintiff was simply trying to

10  receive his medication.  <u>See id.</u>  Plaintiff alleges that both Kuppinger and Watkins "started

11  punishing me," and Plaintiff told them that they could not push him because he had a broken

12  shoulder.  <u>See id.</u>  Plaintiff claims that he was then slammed hard against a wall and then to the

13  ground by both Kuppinger and Watkins.  <u>See id.</u>  Plaintiff also alleges that Defendant Kuppinger

14  then began choking him while Defendant Watkins punched Plaintiff in the side of the head.  <u>See</u>

15  <u>id.</u>  Plaintiff alleges that Defendant Watkins said, "We can do whatever the fuck we want," and

16  that Plaintiff then lost consciousness.  <u>See id.</u>  Plaintiff submits that he now suffers from chronic

17  neck and lower back pain and must wear a back brace.  <u>See id.</u>

18         <u>Claim II</u>

19         Plaintiff alleges that, just before the above-described incident occurred, Defendant

20  Gorrell had an opportunity to intervene and prevent Defendants Kuppinger and Watkins from

21  attacking Plaintiff by telling them "He's fine, I'm just going to give him his meds then he can

22  go," but failed to do so.  <u>See id.</u> at 4.  Plaintiff also alleges that Defendant Gorrell participated in

23  the "code of silence" by failing to report the incident.  <u>See id.</u> at 4.  Plaintiff further claims that

24  when he later saw Defendant Gorrell and asked why Gorrell had not said anything in Plaintiff's

25  defense or stopped Kuppinger or Watkins, Defendant Gorrell said, "You don't understand, I

26  can't, I have to work here! I'm sorry" and quickly walked away.  <u>See id.</u> at 4.

27  / / /

28  / / /

4

1

## II. THE PARTIES' EVIDENCE

2      A.     **Defendants' Motion**

3          In support of their motion for summary judgment, Defendants submit the sworn

4  declaration of Howard E. Moseley, ECF No. 31-3, Associate Director of the Office of Appeals

5  (OOA) at the California Department of Corrections and Rehabilitation (CDCR), and exhibits

6  attached thereto, ECF Nos. 31-4 (Exhibit A), 31-5 (Exhibit B), 31-6 (Exhibit C), and 31-7

7  (Exhibit D).  The exhibits attached to the Moseley declaration consist of the following:

8        Exhibit A     Plaintiff's CDCR inmate appeal history.

9        Exhibit B     Documentation relating to appeal log no. SAC-18-02188.

10        Exhibit C     Documentation relating to appeal log no. SAC-18-01942.

11        Exhibit D     Documentation relating to appeal log no. SAC-18-00297.

12          Also filed in support of Defendants' motion for summary judgment is a separate

13  statement of undisputed facts in which Defendants assert that, based on the Moseley declaration

14  and attached exhibits, facts relating to Plaintiff's failure to exhaust administrative remedies are

15  not in dispute.  See ECF No. 31-2.

16          According to Defendants, the CDCR's OOA administers the inmate grievance and

17  appeals process for CDCR.  See id. at 2.  It keeps an electronic record of each prisoner appeal,

18  and information about each appeal is maintained in an inmate's Appeal History Report.  See id.

19  When an inmate files an administrative appeal, the OOA reviews and screens the claim.  See id.

20  at 2-3.  An appeal is screened out, and not answered substantively, if it does not comply with the

21  regulations governing the appeal process.  See id.  In that case, the inmate's appeal is returned

22  with instructions as to how to cure deficiencies, if a cure is possible.  See id.  An appeal is

23  answered substantively if it complies with the governing regulations.  See id.  An Appeal History

24  Report includes both appeals that are screened out and those that are answered substantively.  See

25  id.  If an appeal is screened out, the report indicates the reason for that decision.  See id.

26          In 2018, the OOA accepted three appeals from Plaintiff with the following log

27  numbers: SAC-18-02188, SAC-18-01942, and SAC-18-00297.  See id. at 3-4.

28  / / /

1          SAC-18-00297

2                 On January 16, 2018, Plaintiff submitted SAC-18-00297, alleging that, on January

3    3, 2018, he was subjected to Religious Land Use and Institutionalized Persons Act and First

4    Amendment violations by an individual not named as a defendant in this case.  See id. at 6-7.

5    Documentation related to this appeal is provided to the Court as Exhibit D to the Moseley

6    declaration.  See ECF No. 31-7.

7          SAC-18-01942

8                 On May 3, 2018, Plaintiff submitted SAC-18-01942, alleging that, on April 1,

9    2018, he was subjected to excessive force by a group of individuals not named as defendants in

10   this case.  See ECF No. 31-2, pg. 6.  Documentation related to this appeal is provided as Exhibit

11   C to the Moseley declaration.  See ECF No. 31-6.

12         SAC-18-02188

13                Plaintiff first submitted SAC-18-02188 for appeal on May 21, 2018.  See ECF No.

14   31-2, pgs. 3-4.  In this appeal, Plaintiff alleged that, on April 2, 2018, Defendants Kuppinger and

15   Watkins used excessive force against him.  See id.  However, the appeal contains no allegations

16   against Defendant Gorrell, although she is referenced in it twice.  See id. at 3.  At the end of his

17   appeal, Plaintiff wrote that "I would've wrote [sic] this appeal 'but I am afraid they are going to

18   kill me' plus Officer Roseales kept telling me 'we don't have 602s[.'] I waiting [sic] for surgery

19   please don't let them get me!"  See id. at 4.

20                The appeal was received by the CSP-SAC appeals office on May 22, 2018, and

21   was sent directly to the second level of review after bypassing the first level.  See id. at 3-4.  On

22   June 7, 2018, Plaintiff was interviewed regarding his complaint.  See id. at 4.  At the interview,

23   Plaintiff reiterated the issues raised in his appeal, and added that "Officer Kuppinger choked me

24   and Officer Watkins punched me in the side of the head."  Id.  Plaintiff articulated nothing further

25   concerning Defendant Gorrell.  See id.

26   / / /

27   / / /

28   / / /

                                              6

On June 7, 2018, the Second Level Response for SAC-18-02188 was finalized, and on July 5th it was approved by the Hiring Authority.  See id. at 8.  The appeal was partially granted in that an investigation into his allegations was conducted.  See id.  However, it was determined at the Second Level that no CDCR policy violation had occurred.  See id.  The Second Level Response instructed Plaintiff that, if he wished to appeal the decision, he would need to appeal through all levels of review up to and including the Secretary's Level of Review, and that his administrative remedies would not be considered exhausted until a third level decision was rendered.  See id. at 4-5.

Plaintiff then mailed SAC-18-02188 to the OOA, which initially received it on July 20, 2018, and rejected it on August 23, 2018, because it lacked the date and signature required by § 3084.6(b)(13) of Title 15 of the California Code of Regulations.[1]  See id. at 5.  The OOA sent Plaintiff a letter returning the appeal and explaining the reason for the rejection.  See id.  On September 4, 2018, the OOA received Plaintiff's re-submitted appeal, which was cancelled on January 11, 2019, because Plaintiff failed to submit the original grievance for institutional review within 30 days of the incident as required by § 3084.8(b) of Title 15 of the California Code of Regulations.  See id.  In the letter informing Plaintiff of the cancellation, the OOA advised Plaintiff that a cancelled appeal could not be re-submitted, and that Plaintiff would instead need to file a separate appeal challenging the cancellation decision itself.  See id.

Based on a review of OOA records, there is no evidence that Plaintiff ever submitted an appeal challenging the cancellation decision related to SAC-18-02188.  See id.  Plaintiff also testified that he had never done so.  See Alexander Deposition, 137:15-18.

Documentation related to SAC-18-02188 is provided as Exhibit B to the Moseley declaration.  See ECF No. 31-5.

/ / /

/ / /

---

[1]     Effective June 1, 2020, Cal. Code Regs. tit. 15. §§ 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at §§ 3480 through 3487.  The former provisions control here because Plaintiff's appeals occurred prior to the amendment of these provisions.

1        **B.        <u>Plaintiff's Opposition</u>**

2                Plaintiff's opposition to Defendants' motion for summary judgment consists of 70

3    hand-written pages composed largely of recitations of law without application to facts.  <u>See</u> ECF

4    No. 35.  Within this document, Plaintiff claims that he was too frightened to file a 602 after being

5    "battered back to back two days in a roll [sic]."  <u>Id.</u> at 25.  He also states that he "was told that

6    morning 'not to do the use of force video['] but [he] did – then, the incident in question."  <u>Id.</u>  He

7    claims to have believed that filing a 602 at that time would result in further bodily harm.  <u>See id.</u>

8                Plaintiff then includes what he refers to as "Undisputed Facts – In Support of

9    Opposition," but which is functionally an answer to the "undisputed facts" offered by Defendants.

10   Plaintiff's asserted factual disputes are as follows:

11               Plaintiff states that he does not have sufficient information to verify Defendants'

12   assertion that a search of Plaintiff's OOA appeal records located three appeals from 2018 (SAC-

13   18-02188, SAC-18-01942, and SAC-18-00297).  <u>See</u> ECF No. 35, pg. 42.

14               Plaintiff also takes issue with Defendants' statement that SAC-18-02188 was

15   cancelled without adjudication.  Plaintiff instead apparently argues a point of law, and contends

16   that "once a third level response has been made an appeal is adjudicated cancelled or not."  <u>See</u>

17   <u>id.</u> at 43.  Plaintiff further argues this point of law in his objection to Defendants' statement that,

18   according to OOA records, there is no indication that he ever submitted an appeal challenging the

19   cancellation of SAC-18-02188, and that under the California Code of Regulations an appeal that

20   is cancelled or rejected is not considered administratively exhausted.  <u>See id.</u>  Plaintiff contends

21   that "Defendants are concealing the fact that Cal. Code Regs. tit. 15 § 3084.1(b) is concerning the

22   grievance being submitted to all three levels, so if the grievance is cancelled or reject [sic]

23   'before' making it to the third level, it is still not considered exhausted."  <u>Id.</u> at 48.

24               Plaintiff apparently does not contest Defendants' factual statement regarding his

25   failure to appeal the cancellation.  Despite an otherwise extensive recitation of case law in

26   preceding sections of this filing, Plaintiff includes no citations related to his legal assertion.

27   Plaintiff does, however, include – with no apparent explanation or acknowledgment – several

28   pages from Chapter 5 of the CDCR Operations Manual, one of which states that "[b]ecause the

1    appeal process provides for a systematic review of inmate and parolee grievances and is intended

2    to afford a remedy at each level of review, administrative remedies shall not be considered

3    exhausted until *each* required level of review has been *completed*. Cancellation or rejection

4    decisions also *do not exhaust the administrative remedies available*. . . . Third level review shall

5    consist of an *evaluation of decisions* relative to an appeal including all supporting documentation

6    and modification orders . . . issued at the first, second, *or third* level." ECF No. 35, pg. 9 (italics

7    added).

8            Additionally, Plaintiff disputes several of Defendants' statements apparently not

9    on a factual basis but because he believes they are irrelevant. On this basis, he disputes

10   Defendants' statement that Plaintiff's other two 2018 grievances made no mention of Defendants

11   Kuppinger, Watkins, or Gorrell. See id. at 45. He also disputes Defendants' summary of the

12   factual and procedural background of SAC-18-00297. See id. at 50.

13           As to Defendants' statements concerning the factual and procedural background of

14   SAC-18-01942, including a statement that Plaintiff was advised that his administrative remedies

15   would not be considered exhausted until a decision was rendered at the third level, Plaintiff once

16   again disputes the statements based on perceived irrelevance. See id. at 48-50. However, he also

17   claims that Defendants were mistaken when they stated that Plaintiff had pursued a theory of

18   supervisor liability against one of the defendants in that case. See id. While not dispositive, this

19   Court nevertheless notes that Plaintiff expressly put forth such a theory of liability in that appeal.

20   After stating that the alleged attack in that appeal took place in front of the supervisor in question,

21   Plaintiff wrote, "[k]nowledge of a pattern or practice of unconstitutional violations or condition or

22   existence of facts which create the potential for violations may subject a supervisor to liability for

23   failure to correct the situation." ECF No. 31-6, pg. 6 (citing Brown v. Valoff, 422 F.3d. 926 (9th

24   Cir. 2005)).

25           Plaintiff also takes issue with Defendants' characterization of Plaintiff's original

26   SAC-18-02188 submission, contending that "Defendants misrepresenting [sic] the fact [sic] of the

27   case." ECF No. 35 at 44. Defendants' description appears to be sourced directly from Plaintiff's

28   original appeal, and Plaintiff does not elaborate on this alleged discrepancy.

1    Plaintiff further disputes Defendants' statement that the OOA informed Plaintiff

2    that a cancelled appeal could not be resubmitted and instead Plaintiff would need to submit a

3    separate appeal challenging the cancellation decision itself as required under Cal. Code Reg. §

4    3084.6(e).  Plaintiff argues that "the Plaintiff advised [sic] that the 602 may not resubitted [sic]

5    but may be separately appealed."  Id. at 47.

6    Within the same filing, Plaintiff also submits a document entitled "Declaration in

7    Support of Opposition."  ECF No. 35, pg. 51.  This sworn declaration contains more details

8    concerning his allegations.  See id. at 52-54.  He also asserts, without elaboration, that "I have

9    exhausted all administrative remedies."  Id. at 53.  This is followed by an exhibit consisting of

10   medical records related to his injuries.  See id. at 56-65.

11   Finally, Plaintiff concludes this filing with the handwritten, sworn declarations of

12   fellow inmates Prentiss Robinson and Bruce Wayne Allison, both of whom claim to have

13   witnessed the alleged assault.  See ECF No. 35, pgs. 67-69.

14   Plaintiff also filed a document entitled "Reply in Support of Opposition."[2]  ECF

15   No. 40, pg. 1.  Plaintiff introduces the document by claiming that he would "confute Defedants

16   [sic] claim of nonexhaustion and disinformation presented to the Court by Defendants, this is a

17   futile attempt to prolong the inevitable relief being granted to Plaintiff as a matter of law."  Id. at

18   2.  The document comprises 50 handwritten pages, again consisting mainly of bare recitations of

19   law with arguments peppered throughout.  Although the document contains some additional

20   factual statements, it is unsworn and, as such, cannot be considered Plaintiff's declaration.  In this

21   document, Plaintiff alleges generally that a pattern of retaliation makes filing grievances next to

22   impossible as a practical matter.  While he broadly alleges several tactics prison officials might

23   use to discourage or punish grievances, he does not describe any specific instances of such

24   conduct.  Id. at 5.  Plaintiff also provides additional details concerning the alleged incident and

25   the events that followed.  See id. at 3.  He once again claims that "[he] was scared to write a 602

26   and [he] really felt that they [unspecified officers] would get [him] back for it."  Id.  He does not

27

28   _____
        [2]      In response to this filing, Defendants filed a motion to strike, ECF No. 41, on the
     grounds that the filing is procedurally improper and was filed without leave of Court.

10

1   elaborate beyond this general statement of fear.  However, he claims that he ultimately filed the

2   602 at the encouragement of other inmates.  Id.

3            Plaintiff further contends that, during his time in administrative segregation, he

4   "constantly" requested and was told that prison officials did not have grievance forms, and he was

5   thus unable to file a timely appeal.  Id. at 7.  He does not elaborate as to how he was eventually

6   able to acquire such a form and file several appeals.  Plaintiff also reiterates his contention that

7   Defendants misrepresented Cal. Code Reg. § 3084.6(e), asserting, without evidence, that they did

8   so to intentionally deceive the Court.  See id. at 9.  According to Plaintiff:

9            The Defendants committed actual fraud by misrepresentation of Title 15
            California Code of Regulations § 3084.6(e) stating "The OOA informed
10           [Plaintiff] that appeal was cancelled, appeal may not be resumed [sic],
            instead, a separate 'appeal' 'must' be filed challenging the cancellation
11           decision itself" concealing the actual terms of § 3084.6(e) to deceive the
            Court to Plaintiff's disadvantage, however [Cal. Code Regs.] § 3084.6(e)
12           precisely states verbatim "once concelled [sic], an appeal shall not be
            accepted except pursuant to section 3084.6(a)(3), however, the application
13           of the rules provided in subsection 3084.6(c) to the cancelled appeal the
            [sic] 'may' be separately appealed.["]
14
15   Id.

16           Plaintiff devotes the remainder of his response to an apparent attempt to argue his

17   claim on the merits via unbroken lists of largely irrelevant case citations and holdings or

18   parentheticals from federal courts around the country.  As an exhibit, Plaintiff attaches the same,

19   now-identified, CDCR Operations Manual excerpt as was submitted with his original opposition.

20   See id. at 36-38.  He also attaches, as an exhibit, a hand-written document identified as

21   "Director's Operating Manual Use of Force Procedures" (also included, without identification, as

22   part of his initial opposition filing).  See id. at 39-45.  Finally, Plaintiff attaches as an exhibit the

23   third level OOA response to his appeal.  See id. at 46-48.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III. DISCUSSION**

In their motion for summary judgment, Defendants argue that the undisputed evidence establishes that Plaintiff failed to exhaust available administrative remedies before bringing this suit as required by the Prison Litigation Reform Act (PLRA).  See ECF No. 31-1. The Court agrees.

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  The Supreme Court addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The defendant bears burden of showing non-exhaustion in the first instance.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014).  If met, the plaintiff bears the burden of showing that the grievance process was not available, for example because it was thwarted, prolonged, or inadequate.  See id.

For appeals filed prior to June 1, 2020, a prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.8 of Title 15 of the California Code of Regulations (now repealed).  In California, inmates "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  The inmate must submit their appeal on the proper form and is required to identify the staff member(s) involved as well as describing their involvement in the issue.  See Cal. Code Regs. tit. 15, § 3084.2(a).  These regulations require the

1    prisoner to proceed through three levels of appeal.  See Cal. Code Regs. tit. 15, §§ 3084.1(b),

2    3084.2, 3084.7.  A decision at the third formal level, which is also referred to as the director's

3    level, is not appealable and concludes a prisoner's departmental administrative remedy.  See id.

4    Departmental appeals coordinators may reject a prisoner's administrative appeal for a number of

5    reasons, including untimeliness, filing excessive appeals, use of improper language, failure to

6    attach supporting documents, and failure to follow proper procedures.  See Cal. Code Regs. tit.

7    15, §§ 3084.6(b).  If an appeal is rejected, the inmate is to be provided clear instructions how to

8    cure the defects therein.  See Cal. Code Regs. tit. 15, §§ 3084.5(b), 3084.6(a).  A cancellation or

9    rejection decision does not exhaust administrative remedies.  See Cal. Code Regs. Tit. 15, §

10   3084.1(b).

11         In the context of the PLRA's exhaustion requirement, a defendant must present

12   probative evidence that the prisoner has failed to exhaust available remedies.  See Jones, 549 U.S.

13   at 204.  The defendant bears the initial burden to prove "that there was an available

14   administrative remedy, and that the prisoner did not exhaust that remedy."  Albino v. Baca, 747

15   F.3d 1162, 1172 (9th Cir. 2014).  "If the undisputed evidence shows that the inmate failed to

16   exhaust, a defendant is entitled to summary judgment."  Id. at 1166.  Once the defendant has

17   carried the initial burden, "the burden shifts to the prisoner to come forward with evidence

18   showing that there is something in his particular case that made existing and generally available

19   administrative remedies unavailable to him."  Id.  Exhaustion should be decided "if feasible,

20   before reaching the merits of a prisoner's claim."  Id. at 1170.  "[D]isputed factual questions

21   relevant to exhaustion should be decided by the judge."  Id.

22         Defendants contend that Plaintiff failed to exhaust his administrative remedies

23   prior to filing suit when he failed to appeal the cancellation of SAC-18-02188.  See ECF Nos. 31-

24   1 and 37.  Plaintiff argues that it was not mandatory for him to appeal his third-level cancellation

25   decision before filing suit.  See ECF No. 35, pg. 2.  He also claims that his delayed 602 grievance

26   was justified by his fear of retribution after recently having been "attacked and battered" on April

27   1 and 2.  See ECF No. 35, pg. 2; ECF No. 40, pg. 3.  Finally, he claims that he was unable to

28   access 602 inmate grievance forms while in administrative segregation following the incident.

1  See ECF No. 40, pg. 7.  In their reply brief, Defendants maintain that Plaintiff's untimeliness in

2  submitting his grievance – the reason given for the third-level cancellation – was not justified by

3  his allegations concerning unavailable grievance forms while he was housed in administrative

4  segregation or his professed fear of retribution from prison staff generally.  See ECF No. 37, pgs.

5  1-2.

6  　　　　　At the outset, the Court finds that Defendants' evidence establishes that Plaintiff

7  failed to exhaust his administrative remedies with respect to his Eighth Amendment claims

8  against the three named defendants.  Specifically, the evidence summarized above demonstrates

9  that Plaintiff only filed one inmate grievance – appeal no. SAC-18-02188 – related to the April 2,

10  2018, incident.  The evidence also shows that this appeal was cancelled at the final level and thus

11  never properly presented through all required levels of review.

12  　　　　　Additionally, the evidence shows that SAC-18-02188 did not exhaust remedies as

13  to Defendant Gorrell because, although Gorrell is mentioned, Plaintiff's appeal in SAC-18-02188

14  does not allege that Gorrell violated Plaintiff's constitutional rights.  In order to exhaust

15  administrative remedies, the prisoner must comply with all of the prison system's procedural

16  rules so that the agency addresses the issues on the merits.  Woodford v. Ngo, 548 U.S. 81, 89-96

17  (2006).  Thus, exhaustion requires compliance with "deadlines and other critical procedural

18  rules."  Id. at 90.  Partial compliance is not enough.  See id.  Substantively, the prisoner must

19  submit a grievance which affords prison officials a full and fair opportunity to address the

20  prisoner's claims.  See id. at 90, 93.  The Supreme Court noted that one of the results of proper

21  exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in

22  the administrative process, and others are persuaded by the proceedings not to file an action in

23  federal court."  Id. at 94.  When reviewing exhaustion under California prison regulations

24  applicable here (but which have since been amended), the Ninth Circuit observed that,

25  substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for

26  which the prisoner seeks redress. . . ."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009); see

27  also Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (reviewing exhaustion under prior

28  California regulations).

1    Here, Plaintiff himself essentially concedes that prison officials could not possibly

2    have had a full and fair opportunity to address his claim of deliberate indifference against

3    Defendant Gorrell because he himself never intended to assert such claims during the prison

4    grievance process.  First, Plaintiff's original appeal itself indicated only an objection to the

5    conduct of Officers Kuppinger and Watkins.  Although Defendant Gorrell is named, she is

6    apparently only identified to provide context for the alleged assault and battery by Kuppinger and

7    Watkins.  See ECF No. 31-5, pg. 5.  This is also reflected in the Second Level Response, which

8    briefly summarizes an interview with Plaintiff and does not indicate that he raised concerns about

9    Defendant Gorrell's conduct.  See id. at 7-8.  Plaintiff does not dispute the veracity of this

10   memorandum.  Moreover, in his responses to Defendants' Statement of Undisputed Facts,

11   Plaintiff does not appear to dispute Defendants' statement that SAC-18-02188 "contains no

12   allegations that Psychiatric Technician A. Gorrell failed to protect Plaintiff on that day."  Instead,

13   he relies on his more general argument concerning the relationship between cancellation and

14   adjudication of an administrative appeal.  See ECF No. 35, pg. 43.

15   Defendants' position as to Gorrell is supported by Plaintiff's own deposition

16   testimony, in which he makes clear that he never intended to grieve Defendant Gorrell's conduct

17   in his appeal:

18   Q.      . . . Now, in your appeal to the institutional level . . . you
     captioned the grievance as a . . . staff complaint for excessive force and
19   that you wanted a complete, unbiased investigation, referring to the assault
     and battery, and "blatant disregard for my constitutional rights." Is that
20   correct?

21   A.      That's correct, sir.

22   Q.      And you specifically referenced Officers Kuppinger and
     Watson, correct?
23
     A.      Yes, that's correct.
24
     Q.      And in the section where it says, "Who is your grievance
25   against?" you mentioned those two officers and no other person, right?

26   A.      That's correct.

27   Q.      And Nurse Gorrell isn't referenced in that section, is she?

28   A.      No, not at all.

15

Q. Okay. The only references you have to Nurse Gorrell in your appeal seems [sic] contextual, in other words, you say, "When I arrived to Building 1 from my 7219 TTA, I briefly spoke to Nurse Gorrell to obtain my medication before I go to school. I was late. Officer Kuppinger and Watkins screaming at me saying, 'Lock it up.' The nurse said, 'He's trying to get meds.'" Those are your only references to Nurse Gorrell in your 602, right?

A. Yes, sir, that's correct.
Q. So you weren't really grieving any conduct by Nurse Gorrell? You were really just grieving conduct by Kuppinger and Watkins? Is that fair?

A. Yes, that's fair to say.

Alexander Deposition, 138:7-139:14.

Plaintiff cites Jones v. Bock, 549 U.S. 199, 219, with the parenthetical that "holding prisoners could not be required to name in their grievance all the defendant [sic] they later sue where the grievance rules did not so require." ECF No. 35, pg. 5. This citation is unpersuasive because the rules at issue here apparently *did* so require. Specifically, under CDCR regulations, "The inmate or parolee shall describe the specific issue under appeal, the relief requested, and state all facts known and available to him/her regarding the issue being appealed . . . [¶] The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue." Cal. Dep't Corr. and Rehab, Department Operations Manual 489 (2022). Similarly, Plaintiff's citation to Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009), holding that "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved," is inapplicable because, without some basic theory of wrongdoing, there is no way prison officials could have been on notice concerning a grievance against Defendant Gorrell. Again, Plaintiff cannot assert that he raised the issue of deliberate indifference in his original grievance or appeals when he himself testified that it was never his intention to do so.

The Court concludes that Defendants have met their initial burden on summary judgment of establishing the non-existence of a genuine dispute of material fact with respect to exhaustion of administrative remedies prior to filing suit. The Court next turns to Plaintiff's specific arguments raised in opposition to Defendants' motion: (1) that it was not necessary for

16

1    Plaintiff to appeal the cancellation of SAC-18-02188 at the third level; (2) that exhaustion should

2    be excused because Plaintiff feared retribution; and (3) exhaustion should be excused because he

3    did not have access to the grievance process while he was housed in administrative segregation.

4          **A.      Cancellation of SAC-18-02188**

5              As Defendants correctly note, Plaintiff's argument that he was not required to

6    appeal his third-level cancellation decision is essentially based on a fundamental misinterpretation

7    of applicable law.  Although Plaintiff expressly asserts that "I have exhausted all administrative

8    remedies," ECF No. 35, pg. 53, this conclusory statement does not create a genuine issue of

9    material fact sufficient to avoid summary judgment.

10             Plaintiff's argument centers around the proposition that "once a third level

11   response has been made an appeal is adjudicated cancelled or not."  ECF No. 35, pg. 43.  This

12   proposition is unquestionably untrue.  The plain text of Cal. Code Regs. tit. 15, § 3084.1(b),

13   applicable at the time Plaintiff filed SAC-18-02188, states that "a cancellation or rejection

14   decision does not exhaust administrative remedies."  Similarly, the excerpt of the CDCR

15   Operations Manual that Plaintiff himself attaches as an exhibit states that "[b]ecause the appeal

16   process provides for a systematic review of inmate and parolee grievances and is intended to

17   afford a remedy at each level of review, administrative remedies shall not be considered

18   exhausted until each required level of review has been completed. Cancellation or rejection

19   decisions also do not exhaust the administrative remedies available."  ECF No. 40, pg. 38.

20             Plaintiff asserts that "Defendants are concealing the fact that Cal. Code Regs. tit.

21   15 § 3084.1(b) is concerning the grievance being submitted to all three levels, so if the grievance

22   is cancelled or reject [sic] 'before' making it to the third level, it is still not considered

23   exhausted." ECF No. 35, pg. 78.  As explained above, however, § 3084.1(b) simply does not say

24   that.  Nor does the CDCR Operations Manual excerpt provided by Plaintiff support such a

25   contention. Plaintiff supplies no authority that would support such a reading of either document.

26   Ninth Circuit precedent is clear that administrative remedies are not exhausted by receiving an

27   administrative cancellation based solely on procedural deficiencies, even if this cancellation

28   occurs at the third level of review.  See Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016)

1  (holding that, under the PLRA, a prisoner exhausts available administrative remedies despite

2  failing to comply with a procedural rule if prison officials ignore the procedural problem and

3  render a decision *on the merits* of the grievance at *each* available step of the administrative

4  process); Wilson v. Zubiate, 718 F. App'x 479, 481 (9th Cir. 2017) (holding that a third-level

5  CDCR cancellation decision based on improper jurisdiction did not constitute a decision "on the

6  merits" that would satisfy Reyes).

7          Here, prison officials did not render a decision on the merits, but cancelled

8  Plaintiff's appeal on procedural grounds.  See ECF No. 31-5, pg. 2.  As Reyes and Wilson make

9  clear, this simply does not exhaust Plaintiff's administrative remedies.  The reading Plaintiff

10 proposes would also make little sense, since if that interpretation was correct, it would suggest

11 that lawmakers and the CDCR intended to allow prisoners to deliberately submit defective

12 grievances, appeal to the third level of review, receive a cancellation on procedural grounds, and

13 then proceed straight to litigation.

14         Furthermore, Plaintiff's contention that Defendants committed "actual fraud" is

15 utterly without merit.  Plaintiff appears to argue that Defendants attempted to deceive him by

16 informing him that an appeal challenging his third-level cancellation "must" be filed, when the

17 actual text of Cal. Code Regs. § 3084.6(e) uses the word "may."  See ECF No. 35, pg. 16.  It

18 appears – although Plaintiff is not entirely clear on this point – that Plaintiff is suggesting that,

19 while he was *permitted* to file an appeal challenging his third-level cancellation, he was not

20 *required* to do so before filing the instant complaint.

21         Contrary to Plaintiff's assertion of fraud, Defendants' representation of the statute

22 is entirely consistent with its meaning.  Plaintiff is correct in the sense that no one will *force* him

23 to file such an appeal.  However, he is incorrect in his belief that the use of the word "may"

24 renders an appeal of his cancellation decision an optional step before initiating litigation.  The

25 word "may" merely indicates a choice – the inmate can either accept a cancellation decision,

26 without pursuing the appeal further, *or* he can follow the cancellation appeal process if he wishes

27 to continue to pursue his claim.  Simply put, the word "may" does *not* create a right to bypass a

28 cancellation appeal.  If it did, there would be little point in allowing for such appeals at all

18

1    because, as noted, inmates could simply jump directly to litigation after having their appeals

2    cancelled on procedural grounds.

3        **B.**    **Fear of Retribution**

4            Under McBride v. Lopez, 807 F.3d 982, 987-88 (9th Cir. 2015), a prison grievance

5    system may be deemed "unavailable," and thus excuse a plaintiff's lack of exhaustion, if two

6    conditions are met.  First, a prisoner "must provide a basis for the court to find that he actually

7    believed prison officials would retaliate against him if he filed a grievance."  Id. at 987.  If the

8    prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable;

9    that is, "there must be some basis in the record from which the district court could determine that

10   a reasonable prisoner of ordinary firmness would have understood the prison official's actions to

11   threaten retaliation if the prisoner chose to utilize the prison's grievance system. Only then will

12   the threat render the prison grievance system effectively unavailable."  Id. at 987-988 (internal

13   citations omitted).  Furthermore, "[h]ostile interaction with prison officials, even when it includes

14   a threat of violence, does not necessarily render the grievance system 'unavailable.'"  Id. at 988.

15   "[G]eneral and unsubstantiated fears about possible retaliation" are insufficient.  Rodriguez v.

16   Cty. of L.A., 891 F.3d 776, 794 (9th Cir. 2018).  Finally, "[a]lthough circumstantial evidence can

17   be sufficient to overcome summary judgment in a retaliation case, such evidence must be

18   specific."  Sealey v. Busichio, 696 F. App'x 779, 781 (9th Cir. 2017) (citing McCollum v. Cal.

19   Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011)).  References to unnamed officers

20   engaging in various activities at unspecified times do not satisfy this requirement.  See id.

21           Plaintiff argues that his failure to exhaust should be excused because he was too

22   frightened of prison staff to file a grievance against them.  See ECF No. 35, pg. 25.  However, the

23   argument Plaintiff makes to this Court is the argument he should have made to the OOA in an

24   appeal of his cancellation decision, which was based on untimeliness – untimeliness which,

25   according to Plaintiff, was caused by his fear of retribution.  Clearly, Plaintiff was ultimately able

26   to file the grievance at issue in this case, even if a fear of backlash from correctional officers

27   delayed his submission.  Because the grievance was in fact eventually filed through the CDCR,

28   Plaintiff was required to exhaust his administrative remedies with regard to that grievance before

                                            19

1  initiating litigation.  As previously noted, this includes appealing a third-level procedural

2  cancellation decision.

3         Moreover, Plaintiff fails to satisfy the <u>McBride</u> standard.  Specifically, the Court

4  finds that Plaintiff has not made any showing of the basis for his alleged fear of retribution.

5  Plaintiff's generalized and unsupported allegations are insufficient to excuse exhaustion based on

6  his claim that prison officials' conduct rendered the process unavailable.

7       **C.**      <u>**Access to 602 Forms in Administrative Segregation**</u>

8         While the parties do not agree on the precise dates Plaintiff was housed in

9  administrative segregation and, according to Plaintiff, unable to access inmate grievance forms

10  (602s), Plaintiff's failure to appeal his third-level cancellation is ultimately fatal regardless of

11  which dates Plaintiff was actually housed in administrative segregation or whether or not he was

12  able to access 602 forms while there.  If Plaintiff was truly unable to file in time because he could

13  not access these forms while in ADSEG, his first remedy was to appeal the third-level

14  cancellation that had been made based on the appeal's untimeliness.  Such an appeal of the

15  cancellation decision would have been the proper venue in which to assert that he had been

16  prevented from filing a 602 while in administrative segregation.  This would also have properly

17  exhausted his administrative remedies.  Rather than doing so, he filed the instant suit.  Plaintiff's

18  assertions concerning his inability to file a 602 while in administrative segregation – true or not –

19  do not excuse his failure to appeal the cancellation decision.

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

# IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendants' motion for summary judgment, ECF No. 31, be granted;

2.      This action be dismissed with prejudice for failure to exhaust administrative remedies prior to filing suit; and

3.      All other pending motions, ECF Nos. 36 and 41, be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 5, 2022

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

21